# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

RODNEY HAYSLIP, as Administrator of the
Estate of MARIA D. HAYSLIP,

        Plaintiff,

   v.

GENUINE PARTS COMPANY d/b/a NAPA
and/or RMDS; BALKAMP INC. d/b/a        Case No. 2:17-cv-584
AUTOMOTIVE REDISTRIBUTION CENTER;    JUDGE GEORGE C. SMITH
TRANSFORCE, INC.; and BENJAMIN         Magistrate Judge Deavers
DEVRIES,

        Defendants,

   v.

TRANSFORCE, INC.; BALKAMP INC. d/b/a
AUTOMOTIVE REDISTRIBUTION CENTER;
GENUINE PARTS COMPANY d/b/a NAPA
and/or RMDS,

        Third-Party Defendants.


## OPINION AND ORDER

      This matter is before the Court upon Genuine Parts Company's ("GPC") Motion for

Summary Judgment (Doc. 59) ("GPC's Motion") and TransForce, Inc.'s ("TransForce") Motion

for Summary Judgment (Doc. 56) ("TransForce's Motion" and together with the GPC Motion, the

"Motions"). The Motions originally requested this Court to grant summary judgment against

Plaintiff. However, since TransForce and GPC filed the Motions, TransForce, GPC, and Plaintiff

have settled Plaintiff's claims. Therefore, the Motions, as they relate to Plaintiff's claims against

GPC and TransForce, are moot and this Court will only consider the arguments GPC and

TransForce raise in the Motions against each other. The Motions are fully briefed and ripe for disposition. For the following reasons, TransForce's Motion is **GRANTED IN PART AND DENIED IN PART** and GPC's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On March 25, 2017 Maria Hayslip ("Hayslip") was killed in an auto accident while traveling along Interstate 270 in Columbus, Ohio. Hayslip's vehicle was struck by a semitruck driven by Benjamin Devries ("Devries"). The ensuing investigation revealed that Hayslip had traces of alcohol and marijuana in her system. (Doc. 59-1, Columbus Div. of Police Inf. Summary at 2). The investigation also revealed that Hayslip did not have her lights on at the time of the crash and was either traveling at a low rate of speed or completely stopped on the interstate. (*Id.* at 2–3). The investigation further revealed that Devries was traveling within the posted speed limit and could not have avoided Hayslip if he had tried. (Doc. 59-5, Sanborn Dep. at 12, 16; Doc. 59-8, McWhorter Dep. at 30–31). The Columbus Police Department's investigation ultimately concluded that "Ms. Hayslip's actions were the cause of the crash and therefore she is responsible for her own death." (Doc. 59-1, Columbus Div. of Police Inf. Summary at 3).

Before diving into the details of the legal action, it is important to understand the relationship of the parties involved in this lawsuit. Although Devries was driving the semitruck, the semitruck was owned by Penske.[1] Penske had leased the truck to GPC for GPC's use. GPC was using the truck to transport Balkamp Inc.'s ("Balkamp") products. TransForce is a staffing agency that provides drivers to its customers to drive motor vehicles. GPC contracted with TransForce and used TransForce employees as drivers of its vehicles. GPC and TransForce memorialized their business arrangement in the Drivers Services Agreement by and between

---

[1] While it is undisputed that Penske owned the truck at the time of the accident, Penske is not a party to this lawsuit.

TransForce and GPC, dated as of May 21, 2010 (the "Driver Services Agreement") (Doc. 56-1). At the time of the accident that killed Hayslip, TransForce placed Devries with GPC and the Driver Services Agreement established the terms of the arrangement. Thus, to summarize, the semitruck was owned by Penske, leased to GPC, and driven by a TransForce employee who was hired by GPC for this job pursuant to a Drivers Service Agreement.

On May 31, 2017, Plaintiff brought an action against GPC, TransForce, Balkamp, and Devries alleging that Hayslip's death was caused by Devries while performing his duties under the Driver Services Agreement. Following the filing of Plaintiff's Complaint, TransForce filed a cross-claim against GPC alleging that, should TransForce be held liable to Plaintiff, then TransForce is entitled to contribution, indemnification, and subrogation from GPC and Balkamp. GPC also filed a cross-claim against TransForce. GPC alleged that, should it be found liable for the accident, then GPC is entitled to indemnification and contribution from TransForce. Additionally, GPC alleges that TransForce breached the Drivers Services Agreement by not indemnifying GPC and failing to list GPC as an additional insured on TransForce's general liability insurance policy.

Following the filing of the cross-claims, both GPC and TransForce filed motions for summary judgment regarding the wrongful death claims the Plaintiff asserted against them, as well as the cross-claims that were pending against each other. On March 25, 2019, this Court was notified that all of Plaintiff's claims against GPC and TransForce were settled, pending approval by the Probate Court.[2] GPC and TransForce's cross-claims against each other remain pending. Although Plaintiff settled his claims against GPC and TransForce, GPC and TransForce did not

---

[2] The specific terms of the settlement agreement have not been provided by Defendants.

file new motions for summary judgment on their cross-claims.  Those motions remain pending before this Court, and we turn to them now.

## II.      STANDARD OF REVIEW

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012).  The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment.  *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party

and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

## III. DISCUSSION

The Motions that are before this Court can be categorized into three different disputes.

The first dispute is about liability. TransForce argues that GPC is liable for the actions of Devries under the "statutory employee" theory that is derived from the federal Interstate Commerce Commission regulations found in 49 CFR 376.12. (Doc. 56 at 8). Alternatively, TransForce argues that under state law agency principles, GPC controlled the manner of Devries' work, and therefore GPC is vicariously liable for Devries' actions on the night of the accident. (*Id.* at 10). GPC, of course, disputes both arguments and argues that Devries was a TransForce employee and therefore TransForce is liable for Devries' actions. (Doc. 63 at 8, 11). Additionally, GPC seeks summary judgment for Balkamp because Balkamp simply made the products that Devries was transporting on the night of the accident. (Doc. 59 at 14). TransForce argues that Balkamp should not be dismissed because Balkamp could be vicariously liable. (Doc. 64 at 3).

The second dispute is about indemnity. TransForce argues that it is entitled to indemnification from GPC pursuant the Driver Services Agreement. (Doc. 56 at 13). GPC takes the exact opposite position. GPC disputes that it is required to indemnify TransForce and argues that TransForce is actually required to indemnify GPC. (Doc. 63 at 16). TransForce, of course, disputes that it must indemnify GPC. (Doc. 67 at 6).

The third dispute is about breach of contract. In its cross claim, GPC argues that TransForce breached the Drivers Service Agreement in two ways. First, GPC argues that TransForce was contractually required to indemnify GPC and when TransForce failed to do so, they breached the Drivers Service Agreement. (Doc. 7, GPC Cross Claim at ¶ 40) ("TransForce's failure to accept the defense and indemnity is a breach of the Drivers Services Contract."). Second, GPC argues that TransForce breached the Drivers Service Agreement by not including GPC as an "additional insured" on its insurance. (*Id*. at ¶ 41).

This Court will address each of these claims in turn.

## A. Liability

TransForce presents two arguments for why GPC is liable for the actions of Devries. First, TransForce argues that Devries was a "statutory employee" because Devries was driving a semitruck that displayed GPC's USDOT numbers. Second, TransForce argues that GPC had control over the manner of Devries work because Devries was a "loaned servant" and therefore, GPC is vicariously liable for the actions of Devries. GPC responds by arguing that the USDOT numbers do not make Devries a statutory employee pursuant to a 1992 amendment to the CFR regulations. GPC further argues that GPC did not control the manner of Devries' work, and therefore, Devries was still an employee of TransForce at the time of the accident. With regards to both arguments, this Court agrees with GPC.

### 1. Devries was not a statutory employee of GPC

In 1956, Congress passed a statute that granted the Interstate Commerce Commission (the "ICC") power to regulate the leasing of trucking equipment. *See* R. Clay Porter & Elenore C. Klingler, *The Mythology of Logo Liability: An Analysis of the Competing Paradigms of Lease Liability for Motor Carriers*, 33 TRANS. L.J. 1, 5 (2005). The ICC promulgated a regulation that states:

The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 376.12(c)(1).

In interpreting this regulation, many courts have held that the regulation "creates an irrebuttable presumption that the carrier was the statutory employer of the individual driving the leased vehicle. *Certain Underwriters at Lloyd's, London v. Morrow*, 2019 WL 3558177, No. 1:16-cv-00180-gns-hbb, at *5 (W.D. Ky. August 5, 2019) (citing *Bays v. Summit Trucking, LLC*, 691 F.Supp.2d 725, 730 (W.D. Ky. 2010)). In effect, these courts interpreted the federal regulation to create strict liability on the lessee of a vehicle regardless of who was driving the vehicle with the lessee's placard attached. *Id*. Many states, including Ohio and Georgia, adopted this interpretation of the ICC regulations. *See Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Serv.*, 58 Ohio St. 3d 261, 262 (1991) ("tort causes of action involving leased vehicles of interstate motor carriers, primary liability shall be determined with regard to [ICC] regulations rather than common-law doctrines of respondeat superior, master-servant, independent contractor and the like."); *PN Express, Inc. v. Zegel*, 304 Ga. App. 672, 676 (2010).

However, in 1992 the ICC amended the regulation to include a provision stating: "[n]othing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized lessee." 49 C.F.R. § 376.12(c)(4); *see also Bays*, 691 F. Supp. 2d at 729–31. Accompanying the amendment to the regulations, the ICC issued a comment stating "the regulation does not affect 'employment status.'" *Pet. To Amend Lease and Interchange of Vehicles Regulations*, 8 I.C.C. 2d 669, 671 (1992). "The addition of section (c)(4) was meant to 'give notice to the courts . . . that [(c)(1)] . . . is not intended to affect the relationship between a motor carrier lessee and the

independent owner-operator lessor.'" *Summit Trucking, LLC*, 691 F. Supp. 2d at 731 (citing *Pet. To Amend Lease*, 8 I.C.C. 2d at 670). Thus, it appears from both the text of the amended regulation and the corresponding agency comment that the regulation does not act to create a strict liability, statutory employment relationship for the lessee and driver of a vehicle.

TransForce acknowledges the 1992 amendment to the regulations, however, they urge this Court to follow state court decisions on the issue. TransForce argues that despite the 1992 amendments, "Ohio [c]ourts continue to apply the statutory employment doctrine of strict vicarious liability imposed upon interstate motor carriers . . ." and "Georgia state courts also continue to apply the doctrine of statutory employment . . ." (Doc. 67) (Resp. at 8–9). While it may be true that Ohio and Georgia state courts continue to apply the statutory employment interpretation, this Court is not bound by state court precedent on this issue.

*Erie Railroad Co. v. Tompkins* requires federal courts to apply state case law and state statutes when analyzing state law claims. 304 U.S. 64 (1938). However, this is not a state law claim. The statutory employment argument advanced by TransForce is rooted in the interpretation and application of a federal regulation. Thus, the law at issue here is federal, not state law. For that reason, this Court is free to interpret the ICC regulations without the shackles of state court precedent. *UPS Ground Freight, Inc. v. Farran*, 990 F. Supp. 2d 848, 859 (S.D. Ohio 2014) ("When a question of federal law arises in a diversity case, the federal court must decide that question as it would any question of federal law. It is not bound by the decisions of the forum state courts on questions of federal law."). Therefore, while state courts may continue to apply the statutory employment doctrine, this Court is under no obligation to do so.

When a federal regulation is ambiguous, courts give deference to the federal agency's interpretation of their own regulation. *See Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). However,

federal courts only grant deference to an agency's interpretation of a regulation when the court cannot decipher the plain meaning of the regulation. *Id.* at 2415 ("If uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means—and the court must give it effect, as the court would any law").

In the case at hand, we need not give deference to ICC's interpretation because the plain meaning of the regulation is unambiguous. The text of the regulation currently states: "[n]othing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized lessee." 49 C.F.R. § 376.12(c)(4). It is clear from the text that ICC did not intend to have any impact on the employment status of the driver of a leased vehicle. Even if the regulation were ambiguous, this Court would reach the same conclusion by granting deference to the ICC's interpretation of its own regulation. This Court's reading of the ICC regulations is not without support. The Sixth Circuit, in *Ross v. Wall Street Systems*, found that "the underlying ICC regulations have changed, and [the logo liability] rule is no longer in effect." 400 F.3d at 480 (6th Cir. 2005).

Finally, even if this Court interpreted the ICC regulation to create a statutory employment doctrine, we are skeptical that it would apply in the case at hand. The statutory employment doctrine was created to provide quick relief to the innocent victim of accidents. *See Wyckoff*, 569 N.E. 2d at 1053 (stating that the statutory employment doctrine "fix[es] liability for the accident instead of essentially forcing the innocent victim to sue everyone in order to redress his injuries and damages."). Here, we have two defendants who are arguing about liability—neither is the innocent victim. Even when statutory employment was the law of the land, the Sixth Circuit declined to extend the doctrine of statutory employment to insurers fighting over liability. *Gilstorff*

*v. Top Line Exp., Inc.*, 106 F.3d 400 (Table), 1997 WL 14378, at *3 ("Other Ohio appellate panels have limited *Wyckoff* to its literal application as between the innocent victim and an interstate carrier-lessee whose ICC number appears on the vehicle. . . we think [this] view is more consistent with the holding in *Wyckoff*." (internal citations omitted). *See also Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F. Supp. 2d 579, 590 (E.D. Penn 1999) ("In effect, the Ohio Supreme Court in *Wyckoff* carved out a rule for the narrow purpose of protecting innocent victims involved in accidents with trucks. It did not, however, broadly sweep aside principles of common law and the parties' own agreements to satisfy the claimed need for clarity and consistency in resolving questions of coverage concerning multiple insurers."). For the same reasons, this Court would likely not extend the doctrine to two defendants who dispute liability, and thus, would not find that Devries is a statutory employee of GPC.

Therefore, this Court finds that the ICC regulations do not make Devries a statutory employee of GPC and GPC is not strictly liable for the actions of Devries.

### 2. Neither party is vicariously liable for Devries' actions

TransForce argues that GPC is vicariously liable for the actions of Devries because Devries was a "loaned servant" to GPC and therefore, an employee of GPC at the time of the accident. (Doc. 46 at 10). GPC responds that their control was minimal, at most, and that Devries, at all times, remained a TransForce employee. (Doc. 63 at 11). GPC further argues that because Devries was still an employee of TransForce's at the time of the accident that Transforce is vicariously liable for Devries' actions. (Doc. 63, GPC Resp. at 14).

As a preliminary matter, this Court must determine the proper state law to apply in this case. Then, this Court will determine whether there is a genuine issue of material fact regarding liability.

### a. Ohio Law applies to determine vicarious liability

Because both parties make arguments under Ohio and Georgia law, this Court must decide which law to apply in this case. "Federal courts sitting in diversity must apply the choice-of-law principles of the forum." *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (citing *Klaxon Co. v. Stentor Electric Manufacturing Company*, 313 U.S. 487 (1941)). However, "an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken." *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St. 3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 25.

Under both Ohio and Georgia law, the result of this case would be the same. Both states have established a loaned servant doctrine that focuses on the degree of control exerted over the worker.[3] Similarly, both states focus on the degree of control exerted over the worker when determining if the worker is an employee or an independent contractor.[4] While the states use different words to describe their legal doctrines, the spirit of the law in each state is substantially the same.[5] For this reason, this Court's conclusion does not differ based on which state's law we apply. The parties also acknowledge that the choice of law would not be outcome determinative.[6]

---

[3] *See Rogan v. Brown*, 2006-Ohio-5508, ¶ 33 ("the inquiry should focus on the question of control, that is, whether the general employer has retained direction and control over the employee, or whether, with respect to the particular act or acts resulting in tort liability, the control of the employee has passed to the borrowing employer"); *Southway Indus. Servs., Inc. v. Boyd*, 283 Ga. App. 850, 852 (2007) ("in order to show that a particular employee is a "borrowed servant," "the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control; and (3) the special master had the exclusive right to discharge the servant.").

[4] *See Ferguson v. Dyer*, 149 Ohio App.3d 380, 384, 777 N.E.2d 580 (10th Dist.2002) ("In determining whether the borrowed employee has become a loaned servant of a party other than his general employer, the inquiry should focus on the question of control"); *U.S. Fidelity & Guaranty Co. V. Forrester*, Ga.App. 762, 764, 191 S.E.2d 787 (1972) (stating that whether an employee is a loaned servant is based on the special master's complete control of the employee, the general master's lack of control, and the special master's exclusive right to discharge the employee).

[5] *See Bostic v. Connor*, 37 Ohio St.3d 144, 146, 524 N.E.2d 881 (1988) ("who had the right to control the manner or means of doing the work"); *Ross v. Ninety-Two West, Ltd.*, 201 Ga.App. 887, 891, 412 S.E.2d 876 (1991) ("the chief test lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work as distinguished from the right merely to require certain definite results in conformity to the contract.").

[6] (ECF No. 56, TransForce MSJ at 10) ("The inquiry under Georgia law is substantially similar and leads to the same result."); (ECF No. 63 at 15) ("The result under Georgia law is identical at this stage").

Thus, this Court does not need to undergo a choice of law analysis and will apply Ohio law to the case at hand. *See Gouge v. BAX Global, Inc.*, 252 F. Supp. 2d 509, 521 (N.D. Ohio, March 11, 2003) ("Where the party seeking the application of foreign law fails to demonstrate a conflict, Ohio law governs").[7]

### b. Neither party is vicariously liable for the actions of Devries

"Generally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of *respondeat superior*." *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St. 3d 435, 438 (1994). "This doctrine of liability depends on the existence of control by a principal (or master) over an agent (or servant), terms that we have used interchangeably." *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St. 3d 594, 599 (2009). However, employers can only be liable for the conduct of their employees when the employee themselves are directly liable. *Id*. at 599 ("Although a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable").

Here, TransForce, GPC, and Devries settled the claims with Plaintiff, thus, there has been no finding of liability. Further, there is no evidence in the record to support a finding that Devries was acting in a negligent manner at the time of the crash. Devries was driving within the posted speed limit, was not cited for the crash, and the police report stated that Devries could not have swerved out of the way to avoid striking Hayslip's vehicle. *See* Section I, *supra*. Therefore, in the case at hand, neither TransForce nor GPC can be found vicariously liable for the actions of Devries because there has been no showing of Devries' liability. While the parties argue about

---

[7] It should be noted that even if the choice of law affected the outcome of the case and this Court conducted a choice of law analysis, Ohio law would apply. For tort actions, Ohio choice of law rules provide that the law of the jurisdiction where the accident occurred govern unless some other state has a more significant interest in the outcome of the case. *Logan Farms v. HBH, Inc.*, 282 F. Supp. 2d 776, 788 n.6 (S.D. Ohio 2003). In the case at hand, the accident occurred in Ohio and no other state has a more significant interest in the outcome of the case before us.

who the "employer" was at the time of the accident and the degree of control each exerted over Devries, the reality is that those arguments are irrelevant. For if an employee is not negligent, its employer cannot be held liable for that employee's actions. *See supra*. Thus, it does not matter whether Devries was an employee of TransForce or of GPC at the time of the accident, because neither would be liable for Devries' actions.

To summarize this Court's liability findings, GPC was not Devries' statutory employer, and neither party can is liable for the actions of Devries. Therefore, TransForce's Motion and GPC's Motion with regards to each of their claims that the other party is vicariously liable for Devries' actions are **DENIED**.

### 3. Balkamp is Granted Summary Judgment

Balkamp is a subsidiary of GPC that sells automotive parts. GPC seeks summary judgment for Balkamp because Balkamp was simply the seller of the goods that were being transported in the truck at the time of the accident. GPC asserts that Balkamp cannot be found to be vicariously liable as no employment relationship existed with Devries at the time of the accident. TransForce counters that GPC has not produced evidence of sufficient quality to support their argument, and thus, Balkamp cannot be granted summary judgment in this case. This Court agrees with GPC.

The record reflects that the only connection Balkamp has to this case is the seller of the transported goods. Balkamp did not contract with TransForce nor did they have any control over Devries actions. This case is similar to *Bookwalter v. Prescott*. 168 Ohio App.3d 262, 2006-Ohio-585, 859 N.E.2d 978 (6th Dist.). In *Bookwalter*, there was an auto accident while a truck was transporting chemicals sold by Kemira Chemicals, Inc. *Id*. at ¶ 2. The court found that Kemira, as the maker of the chemicals, did not possess enough control over the driver for Kemira to be held

vicariously liable, and therefore granted Kemira summary judgment.  *Id*. at ¶ 37.  Importantly, the court found that Kemira "was merely interested in the result" of the shipping of the products.  *Id*.

Here, Balkamp was only interested in the result of shipping the products—that the buyer receive the products.  There is no other evidence in the record showing that Balkamp had any manner of control over Devries as the truck driver, nor were they a party to the Driver Services Agreement establishing transport services.  For that reason, Balkamp cannot be held liable in this case and must be granted summary judgment.

Nonetheless, this is merely an academic exercise.  For as with GPC and TransForce, Balkamp could not be found vicariously liable in this case because there has been no showing of Devries' liability.  Thus, even if there were evidence that Balkamp controlled the manner of Devries' work, Balkamp could not be liable.

This Court finds no merit in TransForce's argument that GPC has not provided quality evidence establishing Balkamp was not Devries' employer.  The interrogatories in this case establish that Balkamp had limited involvement with Devries.  Interrogatories are appropriate evidence to consider for summary judgment.  *See Celotex Corp. v Catrett*, 477 U.S. 317 (1986). Therefore, there is quality evidence supporting Balkamp's inability to be vicariously liable for Devries' actions.  Further, GPC is not required to provide evidence that Balkamp was not Devries' employer, rather, it is TransForce's burden to provide evidence that Balkamp was Devries' employer.  TransForce has not done so.

For the foregoing reasons, GPC's Motion with regards to dismissing Balkamp from the case is hereby **GRANTED** and Balkamp is hereby **DISMISSED**.

## B. Indemnification

Both GPC and TransForce argue that they are entitled to indemnification should they be found liable. The Driver Services Agreement contains indemnity provisions, however, the parties disagree over the interpretation of the contract. This Court agrees with TransForce's interpretation.

Once again, as a threshold issue, this Court must determine whether to apply Ohio law or Georgia law to the Driver Services Agreement indemnity provision.

### 1. Georgia law applies when determining indemnification responsibility

"Federal courts sitting in diversity must apply the choice-of-law principles of the forum." *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (citing *Klaxon Co. v. Stentor Electric Manufacturing Company*, 313 U.S. 487 (1941)). However, "an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken." *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St. 3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 25. This Court will therefore first determine whether an actual conflict between Ohio and Georgia law exists as to the enforceability and interpretation of the indemnity provision. If so, the Court will determine which state's law should be applied. Finally, the Court will evaluate the enforceability of the indemnity provision under the relevant law.

Because the parties disagree about the application of the Driver Services Agreement, this Court looks to Ohio and Georgia rules of contract interpretation. Under both Ohio and Georgia law, courts enforce contracts according to their plain meaning if the contract is unambiguous.[8] Similarly, under both Ohio and Georgia law the indemnity relationship between two contracting

---

[8] See *GLIC Real Estate Holdings, L.L.C. v. Bicentennial Plaza Ltd.*, 10th Dist. Franklin No. 11AP-474, 2012-Ohio-2269, ¶ 9 ("when the parties' agreement is integrated into an unambiguous, written contract, courts should give effect to the plain meaning of the parties' expressed intentions"); *Citrus Tower Blvd. Imaging Center, LLC v. Owens*, 325 Ga.App. 1, 7, 752 S.E.2d 74 (2013) ("The trial court must first decide if the language is clear and unambiguous, and, if it is, no construction is required, the court simply enforces the contract according to its plain terms.").

parties is determined by the language used in the contract.[9]  With regards to contractual indemnity specifically, both Ohio and Georgia have a policy of strictly construing indemnification clauses against negligent parties for public policy reasons.[10]  However, under Ohio law a negligent indemnitee can recover indemnification even if the indemnification clause does not explicitly state that such indemnitee is entitled to indemnification even in the event of their own negligence.  *See Am. Family Mut. Ins. Co. v. Cintas Corp. No. 2*, 383 Wis. 2d 63, 87 (2018) ("Ohio law does not, however 'require that contracts purporting to hold an indemnitee harmless for its own negligence contain express language to that effect.'") (quoting *Coulter v Dayton Power & Light Co.*, 134 Ohio App. 3d 620, 623 (1999)).  Under Georgia law, for an indemnitee to recover indemnification, the contract must explicitly state that the indemnitee's own negligence will not preclude recovery.  *See Emergency Professionals of Atlanta, P.C. v. Watson*, 288 Ga. App. 473, 477 (2007) ("unless a contract for indemnification explicitly and expressly states that the negligence of the indemnitee is covered, this Court will not interpret such an agreement as a promise to save the indemnitee from his own negligence").  Thus, the law of contract interpretation with regards to indemnification clauses in Ohio and Georgia will affect the outcome of this case, and this Court needs to continue with a choice of law analysis.

The analysis begins with the Driver Services Agreement's choice-of-law provision: "[t]his Contract shall be construed and interpreted under the law of the State of Georgia."  (Doc. 56-1,

---

[9] *See Worth v. Aetna Ca. & Sur. Co.*, 32 Ohio St.3d 238, 240, 513 N.E.2d 253 (1987) ("The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used."); *Auto-Owners Ins. Co. v. CW Masonry, Inc.*, 350 Ga.App. 401, 447, 829 S.E.2d 443 (2019) ("Indemnity agreements are interpreted under the rules governing contracts.  The main consideration in contract interpretation is the intent of the parties.  The intent of the parties is to be ascertained from the document itself when terms are clear and unambiguous.") (citations omitted).

[10] *See Teledyne Osco Steel v. Woods*, 39 Ohio App.3d 145, 146, 529 N.E.2d 1271 (9th Dist.1987) ("[a] general indemnification clause cannot relieve a negligent indemnitee from the results of its own failure to exercise ordinary car. . . indemnification will not be provided unless so expressed in clear and unequivocal terms."); *United Parcel Services, Inc. v. Colt Sec. Agency, Inc*., 676 Ga.App. 815, 816, 676 S.E.2d 22 (2009) ("Georgia law is very clear that a contract does not indemnify the indemnitee against its own negligence unless it says so").

Ex. A, Driver Services Agreement ¶ 19). When the parties to a contract have chosen the law of a particular state to govern their contract, Ohio courts apply § 187(2) of the Restatement (Second) of Conflict of Laws. *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St. 3d 436, 438–39, 453 N.E.2d 683, 686 (1983). That is:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws, § 187(2). In other words, this Court will enforce the Driver Services Agreement's choice-of-law provision unless one of § 187(2)'s exceptions applies.

This Court finds that neither of the exceptions in § 187(2) applies. First, Georgia has a substantial relationship to the parties because GPC is a Georgia corporation with its principal place of business in Atlanta, Georgia. (Doc. 56-1, Ex. A, Driver Services Agreement at 1). Second, restricting a negligent party from receiving indemnification is not against Ohio public policy. In fact, Ohio courts strictly construe indemnification clauses against negligent indemnitees because it is against Ohio public policy to allow negligent indemnitees to recover unless the contract explicitly provides for that possibility. *See Teledyne Osco Steel v. Woods*, 39 Ohio App.3d 145, 146, 529 N.E.2d 1271 (9th Dist.1987). Thus, it cannot be said that following Georgia's more strict requirement for negligent indemnitees is against Ohio public policy. This Court will follow Georgia contractual law with regards to indemnity.

### 2. GPC is required to indemnify TransForce

The indemnity provisions in the Driver Services Agreement reads:

INDEMNIFICATION BY CONTRACTOR.[11]  In addition to, and not in lieu of, the insurance responsibilities set forth in Paragraph 5, above, Contractor hereby covenants and agrees to defend, indemnify and hold Shipper and its affiliates, officers, directors, employees, agents, subsidiaries, shareholders and related entities harmless from and against claims for noncompliance or breach by Contractor, its drivers, or its contractors with any applicable Federal Motor Carrier Safety regulations, related federal, state, or local laws or ordinances, as specifically set forth in provisions of this Agreement.

INDEMNIFICATION BY SHIPPER.[12] In addition to, and not in lieu of, the insurance responsibilities set forth in Paragraph 5, above, Shipper hereby covenants and agrees to defend, indemnify and hold Contractor and its affiliates, officers, directors, employees, agents, subsidiaries, shareholders and related entities harmless from and against:

    A. Any and all claims, demands, losses, liabilities, lawsuits, actions or causes of action for damages, expenses (including attorneys' fees and costs), costs, interest, compensation, loss of use, lost profits, punitive damages, or any other claim of any type for bodily injury, including death, to any persons (including Shipper's employees or agents) or loss, theft, destruction or damage (including environmental damage) to any property caused during the transportation services.

    B. Any and all fines, citations, penalties or assessments for any violation of any federal, state or local law, regulation or ordinance arising from maintenance or repair of the vehicles used for the transportation services.

(Doc. 56-1, Ex. A, Driver Services Agreement at PAGEID #332–33).  TransForce argues that the plain language of the indemnification clause requires GPC to indemnify TransForce.  TransForce points out that the indemnification clauses states that they are entitled to indemnification for "all claims. . . for any type of bodily injury, including death, to any persons. . ."  GPC counters that under Georgia law, a party is not entitled to indemnification for its own negligence.  (Doc. 63, GPC Resp. at 17).  This Court agrees with TransForce.

---

[11] In the Driver Services Agreement TransForce is defined as the "Contractor."
[12] In the Driver Services Agreement, GPC is defined as the "Shipper."

We do not disagree with GPC's understanding of Georgia law. It is well established that for a negligent indemnitee to recover indemnification, the contract must explicitly provide for that possibility. *United Parcel Services, Inc. v. Colt Sec. Agency, Inc.*, 676 Ga.App. 815, 816, 676 S.E.2d 22 (2009) ("Georgia law is very clear that a contract does not indemnify the indemnitee against its own negligence unless it says so"). In the case at hand, the indemnification clause does not explicitly state that TransForce must be indemnified for its own negligence. However, there is no finding nor any evidence that TransForce was negligent here. The record shows that Devries was not negligent and GPC itself argues that Devries was not negligent when driving the truck. *See* Section I, *supra*. Therefore, because there is no showing or evidence supporting the argument that TransForce or Devries was negligent, TransForce is not seeking indemnification for its own negligence.

This conclusion is supported by the public policy underlying Georgia's explicit negligence doctrine. Georgia's goal is to prevent indemnification of negligent parties because it makes little sense to incentivize negligent conduct. *See Park Pride Atlanta, Inc. v. City of Atlanta*, 246 Ga. App. 689, 690 (2000) ("Public policy seeks to encourage people to exercise due care in their activities for fear of liability, rather than to act carelessly cloaked with the knowledge that an indemnity contract will relieve such indifference."). For that reason, "[p]ublic policy is reluctant to cast the burden for negligent actions upon those who are not actually at fault." *Id*. Here, applying the explicit negligence doctrine would not further public policy because Devries and TransForce exercised due care in their actions.

Because the explicit negligence doctrine is not at play here, we turn to other Georgia rules of contract interpretation. In Georgia, when the terms of a contract are unambiguous, a contract is given its ordinary meaning. *See Richard Bowers & Co. v. Creel*, 280 Ga. App. 199, 200–01 (2006).

Here, the plain language of the contract is unambiguous, and thus, this Court must read the contract by its ordinary meaning.

The Drivers Service Agreement requires that GPC indemnify TransForce for legal actions arising out of bodily injury and death. The action initiated against TransForce by Hayslip's estate was for wrongful death. Thus, this action is within the scope of the Driver Services Agreement. For that reason, GPC must indemnify TransForce for costs arising out of this litigation.

While this may seem unfair to GPC, one must remember that this is the contractual agreement GPC agreed to. The indemnification clause in the Driver Services Agreement is broad and covers a wide range of legal actions. GPC now seeks to rely on a public policy exception to prevent enforcement of the indemnification clause. Unfortunately for GPC, that exception is inapplicable, and thus, GPC is left with the contract they bargained for.

### 3. TransForce is not required to indemnify GPC

GPC argues that TransForce must indemnify it based on the indemnification language in the Driver Services Agreement. (Doc. 63, GPC Resp. at 17) ("Transforce also ignores the clear language in the clause providing indemnity to GPC which entitles GPC to indemnification"). GPC relies on the Driver Services Agreement clause that states TransForce is required to indemnify GPC "from and against all claims for noncompliance or breach by Contractor, its drivers, or its contractors with any applicable Federal Motor Carrier Safety regulations, related federal, state, or local laws or ordinances…" (Doc. 56-1, Ex. A, Driver Services Agreement ¶ 19). GPC contends that this clause applies to a negligence action for violation of the Ohio clear stopping distance law. (Doc. 63, GPC Resp. at 18). Put a different way, GPC contends that state transportation laws are "related" to the Federal Motor Carrier Safety Regulations ("FMCS Regulations"). While TransForce argues that it is entitled to indemnification, not GPC, it does not specifically address

this line of argument from GPC. Nevertheless, this Court disagrees with GPC's interpretation of the Driver Services Agreement.

There is ambiguity in this contractual provision because it is open to more than one meaning. *See Horowitz v. Weil*, 275 Ga. 467, 468 (2002) ("Ambiguity in a contract is defined as duplicity, indistinctness or an uncertainty of meaning or expression"). Therefore, this Court must turn to the rules of contract interpretation under Georgia law. *Cahill v. United States*, 303 Ga. 148, 150 (2018) ("where there is ambiguity, we must apply well-settled rules of contract construction"). One such rule of contract interpretation is the rule of "ejusdem generis." "The longstanding rule of construction known as ejusdem generis provides that a general term following specific terms is confined to the same kind or category of thing." *Turpen v. Rabun County Bd. Of Commrs.*, 245 Ga. App. 190, 193–94(2) (2000). Additionally, "specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate." 11 Willison on Contracts § 32:10 (4th ed.).

Here, the rule of ejusdem juris applies. The Driver Services Agreement contains a general term ("related federal, state, or local laws or ordinances") that follows a specific term ("Federal Motor Carrier Safety regulations"). Pursuant to the rule of ejusdem generis, the specific words in the indemnification clause will limit the meaning of the general words. The general words will be confined to the same category as that of the specific words in the indemnification clause.

While it is true that the purpose of the FMCS Regulations is to promote safety on the highways,[13] and presumably, the purpose of a law requiring a clear stopping distance is also to

---

[13] *See A.D. Transport Express, Inc. v. U.S.*, 28 F. App'x 448, 454 (6th Cir. 2002) (stating "[w]hile the plain meaning of 49 C.F.R. § 395.8(k) should not be strained to alleviate a safety hazard, we refuse to set aside a reasonable interpretation by the FMCSA which effectuates the Act's purpose of improving the Federal motor carrier safety program and promoting safer operation of commercial motor vehicles").

promote safety amongst drivers, this Court does not believe that the parties intended to provide GPC with indemnification for any violation of any traffic law.  We arrive at that conclusion for two reasons.

First, the Driver Services Agreement refers to the FMCS Regulations in other parts of the contract.  Those references to the FMCS Regulations requires TransForce to ensure its drivers are in compliance with the regulations.  For example, it is TransForce's responsibility to ensure its drivers pass drug screenings and are properly licensed commercial drivers.  (Doc. 56-1, Driver Services Agreement at 2).  Thus, it is clear from the contract that TransForce assumes responsibility for compliance with the FMCS Regulations.  Therefore, reading the indemnification clause within the context of the entire contract, the parties intended TransForce to indemnify GPC for causes of action that arise from TransForce's failure to ensure compliance with the FMCS Regulations and any related laws.  Because of ejusdem generis, this Court must look at the term "related laws" in confines of the more specific term, here, the FMCS Regulations.  Within the context of the contract, the reference to "related laws" refers to regulatory requirements for drivers that may be found in other federal, state, or local laws and ordinances.  "Related laws" does not apply to general traffic safety laws.

Second, the Driver Services Agreement entitles TransForce to indemnification for a wide range of claims arising out of tort actions ("any other claim of any type for bodily injury, including death, to any persons").  Tort actions regularly arise out of the violation of state law.  Thus, if this Court adopts GPC's interpretation of the Driver Services Agreement, a violation of state law (and the accompanying tort action) would require TransForce to indemnify GPC and then TransForce to turn around and seek indemnification from GPC.  This result is nonsensical and cannot be the intention of the parties.

For the above reasons, this Court finds that TransForce is not required to indemnify GPC based on the potential violation of a state traffic law because it is not intertwined enough with the FMCS Regulations.[14]

## C. Breach of Contract

In GPC's cross-claim against TransForce, GPC argues 1) TransForce breached the Driver Services Agreement because they failed to indemnify GPC as required by the contract, and 2) that TransForce breached the Driver Services Agreement by failing to list GPC as an additional insured on TransForce's general liability insurance police. (Doc. 7 at ¶ 41). In TransForce's Motion, they move for summary judgment because they assert there is no issue of material fact with respect to this breach of contract claim.

First and foremost, this Court is dismissing any breach of contract claim against TransForce for breach of the Driver Services Agreement indemnification clause because we have found that TransForce is not required to indemnify GPC. Thus, TransForce cannot have breached the contract by failing to indemnify GPC.

Secondly, this Court need not consider the merits of TransForce's argument because GPC did not address the argument in their Response. In the Sixth Circuit, "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011)). Because GPC did not address this argument, they have abandoned their breach of contract claim against TransForce. Therefore, TransForce's Motion with regards to the breach of contract claim is **GRANTED**.

---

[14] It should be noted, that even if this Court adopted GPC's interpretation of the Driver Services Agreement, GPC would still not be entitled to indemnification as there has been no showing that Devries actually violated any state traffic law.

**D. Neither GPC nor TransForce is entitled to contribution from the other party.**

TransForce asserted a Contribution and/or Subrogation claim against GPC in its crossclaim. (Doc. 47, TransForce Cross Claim at ¶ 10). GPC, in its cross claim, asserted a Contribution claim against TransForce. (Doc. 7, GPC Answer at ¶ 37). While neither party explicitly moves for summary judgment on the issue of contribution (they only move for summary judgment on indemnification), this Court finds it proper to address the claim at the present.

Neither GPC nor TransForce is entitled to contribution. Under Ohio law, contribution is available to joint tortfeasors. *See MetroHealth Med. Ctr. v. Hoffmann-LaRoche, Inc.*, 80 Ohio St. 3d 212, 215, 685 N.E.2d 529 (1997). However, "[t]he contribution defendant need merely be 'liable in tort' for the same injury to be subject to a contribution claim. R.C. 2307.31(A). We conclude with respect to R.C. 2307.31(A) that 'liable in tort' means no more than that the contribution defendant acted tortiously and thereby caused damages." *Id.*

In the case at hand, there has been no showing that either of GPC or TransForce "acted tortuously" and are joint tortfeasors. Because there has been no showing that either party is liable in tort, contribution is unavailable to both parties. Therefore, any and all contribution claims are hereby **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, For the following reasons, TransForce's Motion is **GRANTED IN PART AND DENIED IN PART** and GPC's Motion is **GRANTED IN PART AND DENIED IN PART**.

Specifically, GPC's Motion with regards to summary judgment for Balkamp is **GRANTED.** GPC's claim that it is entitled to indemnification is **DENIED**. GPC's claims that TransForce is vicariously liable for the actions of Devries is **DENIED**. GPC's breach of contract

claims against TransForce are hereby **DISMISSED**. GPC's claim to contribution is hereby **DISMISSED**.

TransForce's Motion claiming that GPC is vicariously liable for Devries actions is **DENIED**. TransForce's Motion claiming that it is entitled to indemnification from GPC is **GRANTED**. TransForce's Motion claiming that it is not required to indemnify GPC is **GRANTED**. TransForce's claim that it is entitled to contribution from GPC is **DISMISSED**. Should TransForce choose to pursue indemnification, it should transfer and submit a claim to GPC in accordance with the Driver Services Agreement within 14 days of this order.

The Clerk shall remove Documents 56 and 59 from the Court's pending motions list. The Clerk shall enter final judgment accordingly.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**